UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARNELL MOSLEY,

                              Petitioner,

                                                                  **Hon. Hugh B. Scott**

                              v.

                                                                   10CV478A

                                                                       **Report**
                                                                        **&**
DAVID M. UNGER, Superintendent,            **Recommendation**
Wyoming Correctional Facility,

                              Respondent.

       This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 15). The instant matter before the Court is petitioner, Charnell Mosley, proceeding pro se, seeks a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 vacating his state conviction (Docket No. 1).

## BACKGROUND

       On November 12, 2003, at or around 11:00 a.m., the HSBC bank branch at 762 Joseph Avenue, Rochester, New York, was robbed by a black male, roughly 5'9" with a medium build, wearing dark clothing (Docket No. 13, State Court Record, Trial Transcript ("TT") at 168). The man approached the teller window assigned to Myrnali Santiago and handed her a note that read, "No twenties, loose one hundred dollar bills. Follow procedure. Caution" (TT at 170). Santiago followed bank procedure and handed the man about $600 in loose bills and a dye pack (TT at

172). The man removed the dye pack packaged with the bills and fled the bank on a bicycle (TT at 174-76). Santiago identified Petitioner as the man who robbed her (TT at 169).

On November 24, 2003, at or around 12:50 p.m., the HSBC bank branch at 70 Lyell Avenue in Rochester was robbed by a black male, roughly 5'9" with a medium build, wearing a black jacket and a black baseball cap (TT at 194). The man approached the teller window assigned to Sue Phonepraseuth and handed her a note that read, "Loose hundreds, no dye, no games" (TT at 195). Phonepraseuth handed the man "[about] $600" in loose hundreds and a dye pack (TT at 198). The man tore up the dye pack and fled on foot (TT at 200-02). Phonepraseuth identified Petitioner as the man who robbed her (TT at 196).

The next day, a third HSBC bank branch was robbed the day after the Lyell Avenue robbery. At or around 3:00 p.m. on November 25, 2003, the branch at Culver Road, Rochester, was robbed by a black male, roughly 5'10", wearing a black jacket and a black baseball cap (TT at 150-51). The man approached the teller window assigned to Birgitt Schreier and handed Schreier a note that read, "All loose one hundred dollar bills. No dye. And I'm armeded [*sic*]" (TT at 102). Schreier handed the man "[about] $600" in loose hundreds and a dye pack (TT at 104-05). Schreier was unable to identify petitioner as the man who robbed the bank at trial because she never saw the man's face (TT at 106). After the man left the bank, the branch's security guard, Tony Wearing, saw the man enter a gray Pontiac Grand Prix with New York license plates and leave the scene (TT at 157). Wearing later identified petitioner as the man who robbed the bank (TT at 152-53). Meanwhile, on November 20, 2003, a gray 2003 Pontiac Grand Prix with Maryland license plates was rented by Alfred Bain from a Budget Car Rental

location in Rochester (TT at 256). An employee of Budget Car Rental identified the car used in the Culver Road robbery at trial as the Pontiac rented to Bain (TT at 257).

On the day of the Culver Road robbery, at or around 2:45 a.m., Bain was taken to the hospital by ambulance paramedic Amanda Moker (TT at 120). Bain had sustained serious facial trauma consistent with being "struck by an object" (TT at 124). In the early morning hours of November 25, 2003, petitioner, whom Bain knew socially, struck Bain in the face repeatedly with a metal bar after an argument (TT at 30-31). After a short fight between petitioner and Bain, petitioner climbed into the Bain's rental car and drove away without Bain's permission (TT at 38-40). Bain identified the car used in the Culver Road robbery as his rental car (TT at 22).

After a bench trial in Monroe County Court, petitioner was convicted of three counts of robbery in the third degree, N.Y. Penal Law § 160.05, three counts of petit larceny, N.Y. Penal Law § 155.25, one count of assault in the second degree, N.Y. Penal Law § 120.05, and one count of unauthorized use of a motor vehicle in the first degree, N.Y. Penal Law § 165.08.

Petitioner then filed a motion for post-conviction relief in state court pursuant to N.Y. Crim. Proc. Law art. 440, which was denied without a hearing on April 5, 2007. The Appellate Division, Fourth Department, affirmed the denial of the motion, People v. Mosley, 59 A.D.3d 962, 873 N.Y.S.2d 230 (4th Dep't 2009). The Court of Appeals denied leave to appeal the decision of the Appellate Division, 12 N.Y.3d 918, 884 N.Y.S.2d 699 (2009).

Petitioner appealed the judgment of conviction to the Appellate Division, where the conviction was affirmed, People v. Mosley, 59 A.D.3d 961, 872 N.Y.S.2d 825 (4th Dep't 2009). Petitioner then filed a motion for a writ of error coram nobis alleging denial of effective assistance of appellate counsel. The Appellate Division denied his motion, and the Court of

Appeals subsequently denied leave to appeal the Appellate Division's decision, People v. Mosley, 72 A.D.3d 1657, 899 N.Y.S.2d 723 (4th Dep't 2010), leave denied, 15 N.Y.3d 776, 907 N.Y.S.2d 465 (2010).

## DISCUSSION

Petitioner now seeks a Writ of Habeas Corpus claiming denial of effective assistance of counsel (a) due to trial counsel's failure to serve upon the prosecutor a request that petitioner's alibi witness testify before the Grand Jury; (b) trial counsel's failure to investigate and call petitioner's alibi witness at trial; (c) trial counsel's failure to object to petitioner wearing prison clothing during the bench trial; (d) appellate counsel's failure to file a reply brief to correct an alleged misrepresentation of fact; and (e) appellate counsel's failure to raise on appeal the trial counsel's aforementioned management of petitioner's alibi witness.

Petitioner's claims are either unexhausted or without merit and should be **denied**.

I.   Exhaustion

In the interest of comity and in keeping with the requirements of 28 U.S.C. § 2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to state courts.  See Ayala v. Speckard, 89 F.3d 91, 94 (2d Cir. 1996); Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc), cert. denied, 464 U.S. 1048 (1984).  A state prisoner seeking federal habeas corpus review of his conviction must first exhaust his available state remedies with respect to the issues raised in the federal habeas petition, Rose v. Lundy, 455 U.S. 509 (1982).

Respondent claims petitioner failed to exhaust his claim of ineffective assistance of counsel with respect to trial counsel's failure to serve a request that petitioner's alibi witness

4

testify before the Grand Jury by failing to raise the same in his Crim. Proc. Law 440.10 motion. Respondent concedes, however, that the fruitlessness of a subsequent 440.10 motion by petitioner would effectively exhaust the claim. A court must deny any 440.10 motion based on a claim that, "was previously determined on the merits upon an appeal from the judgment," N.Y. Crim. Proc. Law § 440.10(2)(a). This claim was raised in petitioner's appellate brief and was denied on the merits in the Appellate Division. Mosley, supra, 59 A.D.3d at 962, 872 N.Y.S.2d at 826-27. Any further relief sought through a 440.10 motion would necessarily be denied, and would therefore be fruitless. As such, petitioner has no further state remedies with respect to this claim, and this claim is exhausted.

Additionally, petitioner failed to raise his claim of ineffective assistance with respect to appellate counsel's failure to file a reply brief in appealing his motion for a writ of error coram nobis. Writs of error coram nobis are New York's required procedural vehicle for ineffective assistance of appellate counsel claims, and are "the only available and appropriate procedure and forum to review a claim of ineffective assistance of appellate counsel until such time as the Legislature enacts a particular and comprehensive remedy." See People v. Bachert, 69 N.Y.2d 593, 594-96, 516 N.Y.S.2d 623, 624-25 (1967). Although petitioner failed to raise this ineffective assistance claim in his first motion for a writ of error coram nobis, petitioner would not be barred from raising this "new" claim in a subsequent motion to the Appellate Division. See People v. D'Alessandro, 13 N.Y.3d 216, 221, 889 N.Y.S.2d 536 (2009). As such, it appears petitioner has not exhausted his state remedies for this claim and is barred from bringing it before this Court.

II. Standard of Review

State court findings of "historical" facts, and inferences drawn from those facts, are entitled to a presumption of correctness.  <u>Matusiak v. Kelly</u>, 786 F.2d 536, 543 (2d Cir. 1986), <u>cert. denied</u>, 479 U.S. 805 (1986); <u>see also</u> 28 U.S.C. § 2254(e)(1) (2006) ("a determination of a factual issue made by a State court shall be presumed to be correct.").

As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")[1], 28 U.S.C. § 2254(d) provides that a habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The habeas corpus petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.  The presumption of correctness attaches to findings both by state trial court and by state appellate courts.  <u>Smith v. Sullivan</u>, 1 F. Supp. 2d 206, 210-11 (W.D.N.Y. 1998) (Larimer, C.J.); <u>Nevius v. Sumner</u>, 852 F.2d 463, 469 (9th Cir. 1988), <u>cert. denied</u>, 490 U.S. 1059 (1989).  As noted by then-Chief Judge Larimer in <u>Smith</u>, "the new version of § 2254(d) has clearly raised the bar for habeas petitioners, placing on them the

---

[1]Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214.

burden to show by clear and convincing evidence that the state court's decision was defective in some way." Smith, supra, 1 F. Supp. 2d at 211.

Prior to the enactment of AEDPA, § 2254(d) provided that a state court "determination after a hearing on the merits of a factual issue . . . shall be presumed to be correct," unless certain specified exceptions existed. When it enacted AEDPA, Congress changed the language dealing with the presumption of correctness of state court findings of fact and moved it to § 2254(e), and also added the current version of § 2254(d). The amended statute "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v. Ahitow, 104 F.3d 926, 936 (7th Cir. 1997) (quoting Emerson v. Gramley, 91 F.3d 898, 900 (7th Cir. 1996), cert. denied, 520 U.S. 1122 (1997)); see also Houchin v. Zavaras, 107 F.3d 1465, 1470 (10th Cir. 1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion.").

III.   Ineffective Assistance of Counsel

Petitioner's ineffective assistance of trial counsel claims must be analyzed according to the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Court stated that the test for an ineffective assistance claim is whether petitioner received "reasonably competent assistance" that did not fall "below an objective standard of reasonableness," id. at 688. Generally, defense counsel are "strongly presumed to have rendered adequate assistance," id. at 690. To succeed on such a claim, then, petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy,'" id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).

After establishing "unreasonableness," Petitioner must then establish that he was actually prejudiced by counsel's errors. Strickland, supra, 466 U.S. at 692. Prejudice is established upon a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. This Court determines the presence or absence of prejudice by considering the totality of the trial evidence, id. at 695. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," id. at 691. "To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Knowles v. Mirzayance, 556 U.S. 111, ___, 129 S.Ct. 1411, 1422 (2009).

  A. Trial counsel and Petitioner's Alibi Witness

Trial counsel's failure to investigate and call petitioner's alibi witness at trial did not constitute ineffective assistance of counsel. Generally, an attorney is given wide latitude in his or her trial strategy, Strickland, supra, 466 U.S. at 689, including the calling of witnesses, Greiner v. Wells, 417 F.3d 305, 323 (2d Cir. 2007); see Strickland, supra, 466 U.S. at 674 (claimed ineffectiveness for failing to investigate and present character witnesses). When a court is called to analyze an attorney's trial strategy for instances of ineffective assistance, an attorney enjoys "a strong presumption that [his or her] conduct falls within the wide range of reasonable professional assistance." Strickland, supra, 466 U.S. at 689.

Petitioner has not proffered any facts to overcome this strong presumption that his counsel pursued a trial strategy that fell within the range of reasonable professional assistance.

Petitioner alleges that trial counsel had a duty to investigate petitioner's alibi witness after petitioner requested that his alibi witness be allowed to testify before the Grand Jury (Docket No. 14, Pet'r's Reply to Resp't's Answer at 6).  Petitioner claims that trial counsel's failure to investigate the alibi witness fell below the range of objectively reasonable assistance because, "[W]hen an attorney has failed to investigate his options and make a reasonable choice between them" that attorney's decisions at trial do not constitute a reasonable strategy (id. at 5 (quoting Roe v. Flores-Ortega, 528 U.S. 470, 481 (2000)).

An attorney's decisions concerning which–if any–witnesses to present at trial "is typically a question of trial strategy that reviewing courts are ill-suited to second-guess." Wells, supra, 417 F.3d at 323.  An attorney's decision to not present witnesses capable of providing exculpatory evidence is considered a reasonable trial strategy where presenting such witnesses would likely subject the exculpatory evidence to potentially counterproductive attacks from opposing counsel.  See United States v. Best, 219 F.3d 192, 201-02 (2d Cir. 2000).

Further, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.  In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.  In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, supra, 466 U.S. at 690-91.  A decision to eschew investigation may be based on a reasoned judgment that such investigation would be counterproductive relative to counsel's trial strategy.

9

Shulz v. Marshall, 528 F. Supp.2d 77, 95-96 (E.D.N.Y. 2007), aff'd, 345 Fed. Appx. 627 (2d Cir. 2009).

  This strategic decision is pertinent to petitioner's objection to not investigating or calling the alibi witness before the Grand Jury. New York Criminal Procedure Law 190.50(6) allows a defendant to request the Grand Jury to call witnesses ("a defendant . . . may request the grand jury, either orally or in writing, to cause a person designated by him to be called as a witness in such proceeding," emphasis added), with such requests being granted at the discretion of the Grand Jury, id. Petitioner argues that it was counsel's duty to call that witness pursuant to § 190.50(6) (Docket No. 1, Pet. at 7(a)), but there is no authority under that statute for that duty. The statute provides the opportunity to defendant to call witnesses but the language of the statute does not require the defendant to do so, or for his counsel to decide to call such witnesses before the Grand Jury. Under New York law, a defendant does not have a right to call a witness before the Grand Jury because of the Grand Jury's discretion as to who will be called, People v. Moore, 132 A.D.2d 776, 517 N.Y.S.2d 584 (3d Dep't), appeal denied, 70 N.Y.2d 802, 522 N.Y.S.2d 119 (1987). So, even if counsel agreed with petitioner to call the alibi witnesses, the Grand Jury may have declined to call them. Hence, petitioner cannot overcome the prejudice prong of the Strickland standard.

  At trial, counsel's strategy centered on challenging the witnesses' identification of petitioner as the person who robbed the three HSBC branches, and the identification of the getaway car used in the third robbery as the gray Pontiac rented by Bain. This was clearly a sound strategy, as the prosecution's witnesses, under cross examination by trial counsel, were revealed to be either unable to articulate any distinguishing features petitioner had that would

allow for a definitive identification, or wholly equivocal in their identifications (Docket No. 13, State Court Record, App. I, Ex. 1, Aff. of Charles F. Crimi, Jr. [trial counsel], dated Nov. 9, 2004 ("Crimi Aff") ¶¶ 4-8; see also Docket No. 14, Pet'r Reply Memo. at iii-iv), with one witness, Schreier, unable to identify petitioner as the robber (TT at 106).  As to petitioner's assault charge, trial counsel pursued a self-defense claim (Crimi Aff. ¶ 6).  As to the getaway car, trial counsel attempted to show that petitioner did not unlawfully take control of Bain's car to commit a felony, and that the discrepancy in license plates between Bain's rental car and the car at the scene of the third robbery cast sufficient doubt on any connection between petitioner and that robbery (Crimi Aff. ¶¶ 8-10).

      Within the context of this strategy, trial counsel could reasonably have determined that investigating or calling petitioner's alibi witness, Kashka McGill, would have been unnecessary.  Indeed, calling McGill would not only been unnecessary, but possibly counterproductive as well.  The "exculpatory evidence" provided by McGill in his affidavit is, in fact, not exculpatory at all.  While McGill claimed to be able to account for Petitioner's whereabouts during the time of the robberies in question, the information in the affidavit is general and unverifiable. McGill claimed that, while Petitioner was living with him in November, 2003, "[a]t no time did Charnell ever leave my house before 3:30 p.m." (Docket No. 13, State Court Record, App. L, Ex. C, Aff. of Kashka McGill, dated Nov. 21, 2006 ("McGill Aff") at 3).  McGill never provided proof of petitioner's alleged daily routine, nor did he provide any specific proof as to petitioner's whereabouts on the dates of the robberies.  In fact, McGill admitted there were times when he could not attest to petitioner's whereabouts (McGill Aff at 2-3).

Given the lack of substantive information in McGill's affidavit and the possibility that an attack on McGill's account would have left petitioner's whereabouts during the robberies open to question, trial counsel could have reasonably determined that calling McGill would have been counterproductive to Petitioner's defense. "The decision whether to expose the defendant to such an attack is surely a tactical decision that cannot be second-guessed." Best, supra, 219 F.3d at 202.

For the foregoing reasons, trial counsel's failure to serve upon the prosecutor a request that petitioner's alibi witness testify before the Grand Jury and the failure to investigate and call that witness at trial did not fall below the objectively reasonable level of professional assistance of counsel guaranteed by the Sixth Amendment. Thus, petitioner's claim should be **denied** on this ground.

B.   Trial Counsel's Failure to Object to the Petitioner Wearing Prison Clothing During Trial

Trial counsel's failure to object to petitioner wearing prison clothing during trial did not constitute ineffective assistance of counsel. Even if it could be considered unreasonable for trial counsel to allow petitioner to appear at trial in prison clothing, petitioner has failed to prove prejudice. Petitioner relies primarily on Supreme Court precedent regarding the effect of prison clothing on juries (Docket No. 14, Pet'r Reply at 18), see Estelle v. Williams, 425 U.S. 501, 504 (1976) (hereinafter "Williams"). Petitioner has not offered any evidence supporting his claim that his appearance in prison clothing unduly influenced the proceedings in his bench trial. Petitioner's objection is based on the presumption that appearing in prison clothing before a judge and witnesses in a bench trial would impair "the presumption [of innocence] so basic to the

adversary system," Williams, supra, 425 U.S. at 504.  This impairment found in Williams, however, was not the effect that prison clothes would have on judges or witnesses, but members of a jury, see id.  Petitioner concedes that he was tried before a judge solely, but argues that the prejudice remains for witnesses being affected by him being in prison garb.  But, as discussed above regarding the identification testimony, there appears to be no influence upon the bank robbery witnesses of petitioner appearing in prison uniform.

Petitioner rightly points out that, for the purpose of establishing prejudice, "the defendant must show more than [counsel's] unprofessional performance merely having some conceivable effect" relative to Strickland's "reasonable probability" standard, Henry v. Poole, 409 F.3d 48, 53 (2d Cir. 2005).  Petitioner is asking this Court to grant relief on this ground precisely due to the "conceivable effect" his appearance in prison clothes might have had on the result of his trial.  The "reasonable probability" standard does not require petitioner to prove by a preponderance of the evidence that appearing in prison clothes altered the outcome of his case, id. at 63, but petitioner must at least prove that counsel's conduct at trial undermined the adversary process to the extent the result cannot be considered just, Strickland, supra, 466 U.S. at 691-92.

Petitioner does claim that his conviction cannot be relied upon because one witness, Myrnali Santiago, was unduly influenced by his prison clothing (Docket No. 14, Pet'r Reply at 19). Santiago, a victim of the Joseph Avenue robbery, could not identify Petitioner as the person who robbed her until she saw petitioner in open court (TT at 169).  Petitioner argues that he was identified by Santiago because he was the only person wearing prison clothing in the courtroom (Docket No. 14, Pet'r Reply at 19).

13

Setting aside the fact that Santiago's testimony was relevant to only two of the eight counts petitioner was charged with, trial counsel cross-examined Santiago with respect to her failure to identify petitioner in a photo array and discrepancies in her Grand Jury testimony and her initial report to the police. At that point, any discrepancies or irregularities in Santiago's testimony were for the factfinder to weigh in reaching his verdict. In sum, petitioner's claim that his appearance in prison clothing impaired his presumption of innocence in a bench trial is pure speculation. Thus, Petitioner's claims of ineffective assistance of trial counsel should be **denied**.

  C. Appellate Counsel's Ineffectiveness

Assuming Petitioner somehow exhausted his ineffective assistance of appellate counsel claims, those claims are without merit. This Court has recognized the right to effective assistance of counsel is not limited to trial. Kimmelmen v. Morrison, 477 U.S. 365, 377 n.2 (1986); see, e.g., Knight v. Walsh, 524 F. Supp.2d 255, 290 (W.D.N.Y. 2007) (Foschio, Mag. J.) (Report & Recommendation), adopted, 524 F. Supp. 2d 255 (W.D.N.Y. 2007) (Skretny, J.). A claim of ineffective assistance of appellate counsel is held to the same Strickland standards as trial counsel. Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992)).

Generally, appellate counsel is expected to winnow out weaker arguments when presenting an appeal. See Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Although appellate counsel has no duty to raise every non-frivolous claim that could be presented, a petitioner may establish ineffective assistance of counsel where appellate counsel omitted "significant and obvious issues" in favor of issues that were "clearly and significantly weaker," Mayo, supra, 13 F.3d at 533.

Petitioner claims that trial counsel's failure to submit a request for petitioner's alibi witness to testify before the Grand Jury was a "significant and obvious issue" that appellate counsel wrongfully omitted from petitioner's appeal. A review of Petitioner's brief, however, reveals that appellate counsel <u>did</u>, in fact, raise that issue as a basis for appeal (Docket No. 13, State Court Record, App. B, Pet'r's Brief to the App. Div. at 24-25). Appellate counsel argued that trial counsel failed to pursue the alibi defense (<u>id.</u>), implicitly including the failure to call the alibi witnesses before the Grand Jury. The fact that appellate counsel did not argue the specific point of the failure to call the alibi witnesses before the Grand Jury is not sufficient ineffective assistance to warrant the grant of habeas relief. The particular sub-issue petitioner now argues is not a "significant and obvious" issue that would require appellate counsel to raise separate from the greater claim of trial counsel's failure to follow up the alibi witness at all. Thus, Petitioner's claims of ineffective assistance of appellate counsel on this basis should be **denied**.

## CONCLUSION

For the foregoing reasons, it is recommended that the Petition for Habeas Corpus (Docket No. 1) be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report &**

Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
August 12, 2011